```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
GSI COMMERCE SOLUTIONS, INC.,        :
                                     :
              Petitioner,            :       09 CV 2857 (JSR)
                                     :
         -v-                         :       MEMORANDUM ORDER
                                     :
BABYCENTER, L.L.C.,                  :
                                     :
              Respondent.            :
------------------------------------ x
```

JED S. RAKOFF, U.S.D.J.

      GSI Commerce Solutions, Inc. ("GSI") petitions the Court for an order compelling arbitration, and respondent BabyCenter, L.L.C. ("BabyCenter") cross-moves for an order disqualifying Blank Rome LLP as GSI's counsel in the underlying arbitration proceedings. Both parties agree that GSI's underlying breach of contract claim against BabyCenter is governed by an arbitration provision in the parties' contract, and both parties are fully prepared to arbitrate GSI's claim. However, BabyCenter refuses to proceed with arbitration so long as GSI is represented by Blank Rome, which currently also represents BabyCenter's corporate parent, Johnson & Johnson ("J&J"). GSI, in turn, insists that there is no conflict. After reviewing the parties' briefs and hearing oral argument, the Court, by Order dated May 26, 2009, denied GSI's motion to compel arbitration as long as Blank Rome represents GSI and granted BabyCenter's cross-motion to disqualify Blank Rome. This Memorandum Order explains the reasons for those rulings and directs the entry of final judgment.

      Blank Rome's relationship with J&J was originally established by a January 20, 2004 Engagement Agreement, under which Blank Rome

agreed to represent J&J "in connection with the European Union ('EU') Data Protection Directive and potential certification for the U.S. Safe Harbor." Declaration of Christopher A. Lewis, Esq. ("Lewis Decl.") Ex. 2-A, at 1. The Engagement Agreement provided that, unless otherwise agreed, its terms would apply "to this matter and to all other matters which we agree to undertake on your behalf." Id. That Agreement also stated, however, that:

> Unless agreed to in writing or we specifically undertake such additional representation at your request, we represent only the client named in the engagement letter [i.e., J&J], and not its affiliates, subsidiaries, partners, joint venturers, employees, directors, officers, shareholders, members, owners, agencies, departments, or divisions. If our engagement is limited to a specific matter or transaction, and we are not engaged to represent you in other matters, our attorney-client relationship will terminate upon the completion of our services with respect to such matter or transaction whether or not we send you a letter to confirm the termination of our representation.

Id.

The Engagement Agreement also noted that Blank Rome had reviewed its then-current engagements, and found a conflict requiring J&J's waiver: its representation of Kimberly-Clark Corporation in patent litigation against J&J affiliate McNeil PPC. Id. at 2. The Agreement noted, however, that Blank Rome believed the conflict could be waived. Id. Blank Rome also sought a prospective waiver from J&J with respect to "patent matters related to [J&J] or its affiliates or subsidiaries." Id. at 3. Aside from this "specifically defined category of matters . . . for Kimberly-Clark," Blank Rome did not

seek, nor did it receive, any prospective waiver from J&J for any other future conflict. Id.

In June 2005, Blank Rome entered into an amendment to the January 20, 2004 Engagement Agreement with J&J, which reaffirmed that Blank Rome represented only J&J (and not its subsidiaries, etc.), and which provided for a prospective waiver for patent litigation that might arise between J&J and other Blank Rome clients in the future. Lewis Decl. Ex. 2-B.

Pursuant to the Engagement Agreement and the 2005 amendment, J&J periodically asked Blank Rome to provide legal advice relating to J&J's subsidiaries and affiliates on specific matters or transactions. Declaration of Jennifer J. Daniels, Esq. ("Daniels Decl.") ¶¶ 6-10. Indeed, J&J notes that "[m]ost of the work Blank Rome performed pursuant to the Engagement Agreement was for J&J's operating companies rather than for J&J itself." Affidavit of Helen Torelli ("Torelli Aff.") ¶ 7. One such representation was of BabyCenter. Daniels Decl. ¶ 9. According to Jennifer Daniels, Esq., the Blank Rome partner in charge of that matter, at no time did Blank Rome provide any advice to BabyCenter in connection with its agreement with GSI, nor did Ms. Daniels have access to any privileged information relating to that agreement or the parties' course of dealings. Id. ¶ 10. Likewise, the Blank Rome partners that represent GSI in the instant dispute (James Smith and Rebecca Ward) have never performed any work for either J&J or BabyCenter, and have never received or otherwise had access to any of BabyCenter's

3

privileged information regarding its agreement with GSI or to their course of dealings.  Declaration of Rebecca D. Ward ("Ward Decl.") ¶¶ 19-20.  It is also undisputed that the issues raised in the underlying dispute between GSI and BabyCenter bear no relation to the issues addressed in Blank Rome's ongoing representation of J&J or its affiliates, nor to Blank Rome's representation of BabyCenter.  Id. ¶ 21.

Nevertheless, BabyCenter contends that it should be considered a current client of Blank Rome, thus disqualifying Blank Rome from representing GSI in the underlying arbitration proceedings, because Blank Rome cannot simultaneously represent adverse parties without consent.  GSI, in turn, contends that BabyCenter is, at most, a former client whose relationship with Blank Rome ended in 2006, thus rendering disqualification unnecessary and improper.

"The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'" Hempstead Video, Inc. v. Incorporated Village of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005) (quotation omitted). Disqualification is warranted whenever an attorney's involvement in a matter "poses a significant risk of trial taint." Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 748 (2d Cir. 1981).  Such a risk arises when, for instance, "an attorney represents one client in a suit against another client, . . . ." Id.

In arguing that BabyCenter should not be considered a current client of Blank Rome, GSI relies heavily on the parties' Engagement Agreement, which, with certain exceptions, limited Blank Rome's

4

representation to J&J and disavowed any representation of J&J's "affiliates, subsidiaries, partners, [or] joint venturers." In that respect, GSI observes that a "lawyer who represents a corporation or other organization does not, simply by virtue of that representation, necessarily represent any constituent or affiliated organization, such as a parent or subsidiary," New York R. of Prof'l Conduct 1.7, comment 34, and that it is well-established that lawyers are permitted to limit the scope of their representation of a client as long as the limitation is reasonable under the circumstances and the client gives informed consent. See, e.g., Campbell v. Fine, Olin & Anderson, P.C., 642 N.Y.S.2d 819, 821 (1996).

But GSI reads the Engagement Agreement rather more broadly than its language justifies. In particular, it may not fairly be read to limit Blank Rome's duty of loyalty to J&J's subsidiaries that it undertakes to represent nor to authorize Blank Rome to sue those companies at the same time it is representing them. Indeed, it would be a strange agreement -- and one of doubtful enforceability -- that would permit a law firm to sue the very company it is currently representing absent the most express and unequivocal waiver by all councerned. Moreover, the Engagement Agreement itself contains prospective waivers of certain conflicts, thus indicating (at least implicitly) that Blank Rome was aware of the potential conflict of interest that would be posed by its representation of interests adverse to J&J and its subsidiaries.

In the end, then, the real issue here is whether BabyCenter should be considered a current client for disqualification purposes.

Although the specific matter as to which Blank Rope represents BabyCenter allegedly ended in 2006, for purposes of disqualification, the Court must also examine the extent to which BabyCenter and J&J must be considered essentially the same client for purposes of the instant litigation, JPMorgan Chase Bank v. Liberty Mutual Ins. Co., 189 F. Supp. 2d 21, 23 (S.D.N.Y. 2002), for if they are, the conflict is palpable, since it is undisputed that Blank Rome continues to represent J&J in various matters.

Although technically BabyCenter is a wholly owned subsidiary of J&J, Affidavit of Stuart Wilks ("Wilks Aff.") ¶ 4, as a practical matter it is part and parcel of J&J. Among other things, BabyCenter shares accounting, audit, cash management, employee benefits, finance, human resources, information technology, insurance, payroll, and travels service and systems with J&J. Id. ¶ 6; see Discotrade Ltd. v. Wyeth-Ayerst Int'l, 200 F. Supp. 2d 355, 357 (S.D.N.Y. 2002) (in light of shared services, two corporate affiliates did "not view each other as strangers, but more like members of the [same] family"). Of particular relevance here, BabyCenter does not maintain its own legal department, but instead relies on J&J's Law Department for legal services (along with outside counsel retained by it or by it through J&J). Wilks Aff. ¶ 6; see Hartford Acci. & Indem. Co. v. RJR Nabisco, Inc., 721 F. Supp. 534, 540 (S.D.N.Y. 1989) ("[i]f the parent and subsidiary were distinct and separate entities for representation purposes, there would have been no need for the parent's general counsel to have retained this supervisory role"). Further, the agreement between GSI and BabyCenter that is

6

the subject of the underlying arbitration was negotiated by an attorney in J&J's Law Department, together with businesspeople from BabyCenter. Wilks Aff. ¶ 7. Indeed, it is undisputed that members of J&J's Law Department have been involved in this action on behalf of BabyCenter since the parties' dispute arose in October 2008, id. ¶¶ 8-13, and Blank Rome acknowledges that it has dealt with J&J attorneys during the pendency of this action. See Ward Decl. ¶ 9; Daniels Decl. ¶¶ 11-13. Further, since BabyCenter is a wholly owned subsidiary, its liabilities directly impact J&J's. See, e.g., Stratagem Dev. Corp. v. Heron Int'l N.V., 756 F. Supp. 789, 792 (S.D.N.Y. 1991) (a lawyer's duty of loyalty "applies with equal force where the client is a subsidiary of the entity to be sued," and where the liabilities of a wholly owned subsidiary "directly affect the bottom line of the corporation parent").

In short, notwithstanding the scope of representation set forth in the Engagement Agreement, the Court is satisfied that the relationship between BabyCenter and J&J is sufficiently "close as to deem them a single entity for conflict of interest purposes." Id. at 358; see JPMorgan Chase, 189 F. Supp. 2d at 21, 23 (concluding that, where the relationship between a parent and subsidiary "was extremely close and interdependent, both financially and in terms of direction," and where "the two share a wealth of common interests adversely impacted by the lawsuit in question," the doctrine of concurrent representation applies); Stratagem Dev. Corp., 756 F. Supp. at 792; Hartford Accident & Indem. Co., 721 F. Supp. at 540 ("the Court concludes that RJR Nabisco, through its subsidiary

7

Reynolds Tobacco, was a client of LeBoeuf"); cf. Eastman Kodak Co. v. Sony Corp., Nos. 04-CV-6095, 04-CV-60982004, WL 2984297, at *4 (W.D.N.Y. Dec. 27, 2004) ("without Kodak's consent, it is ethically impermissible for [a law firm] to have a wholly owned and integrated subsidiary of Kodak as a client and simultaneously represent Kodak's adversaries in pending litigation in state and federal court").

Accordingly, the Court concludes that BabyCenter must be considered a current client of Blank Rome for purposes of disqualification. It follows that, as noted above, disqualification must follow absent the most express of waivers. See New York R. of Prof'l Conduct 1.7(a), Comment 6 ("absent consent, a lawyer may not advocate in one matter against another client that the lawyer represents in some other matter, even when the matters are wholly unrelated"). In Discotrade Ltd., for instance, the Second Circuit determined that a law firm was barred from suing one subsidiary of Wyeth, Inc. when it simultaneously represented a division of another subsidiary, on the grounds that the two corporations were so close as to deem them a single entity for conflict of interest purposes. 200 F. Supp. 2d at 358; see Hempstead Video, 409 F.3d at 133 ("in cases of concurrent representation . . . it is 'prima facie improper' for an attorney to simultaneously represent a client and another party with interests directly adverse to that client").

Here, as already noted, the Engagement Agreement fails to provide the unequivocal express waiver that would be necessary to prevent Blank Rome's disqualification here. On the contrary, the Engagement Agreement, though drafted by Blank Rome, provides for only

8

limited prospective waivers, none of which are relevant here. See Emle Indus., Inc. v. Patanex, Inc., 478 F.2d 562, 573-74 (2d Cir. 1973) ("[i]t would be unreasonable to read [a company's] recognition and acceptance of [potential conflicts in specific pending litigation] as a blanket waiver by [the company] of all possible future claims in which [the lawyer] might be involved in a posture adverse to [the company]").[1]

Accordingly, for the foregoing reasons, the Court here reconfirms its Order of May 26, 2009 denying GSI's motion to compel arbitration as long as Blank Rome represents GSI and granting BabyCenter's cross-motion to disqualify Blank Rome. The clerk is directed to enter final judgment.

SO ORDERED.

JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       July 27, 2009

---

[1] Further, although the parties disagree as to the scope of J&J's agreement to permit Blank Rome to represent GSI in mediation before the commencement of the underlying arbitration proceedings, there is no indication that J&J ever expressly approved of Blank Rome's continued representation of GSI in arbitration if mediation failed. Also, to the extent that GSI argues that BabyCenter unfairly delayed in objecting to Blank Rome's conflict of interest, the Second Circuit has emphasized that because "disqualification is in the public interest, the court cannot act contrary to that interest by permitting a party's delay in moving for disqualification to justify the continuance of a breach of the Code of Professional Responsibility." Id. at 574.

9